1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10   JUAN CARLOS CORRAL,                    Case No. 2:22-cv-01254-MCS-PVC
     individually and on behalf of all
11   similarly situated and/or aggrieved
     employees of Defendants in the State of   **ORDER RE: (1) PLAINTIFF'S**
12   California,                              **MOTION FOR CLASS**
                                             **CERTIFICATION, (2) PLAINTIFF'S**
13                        Plaintiff,         **UNOPPOSED APPLICATION TO**
                                             **FILE DOCUMENTS UNDER SEAL,**
14                                           **AND (3) DEFENDANT'S MOTION**
              v.                             **TO STRIKE CORRECTED**
15                                           **DECLARATION OF JUSTIN REGUS**
                                             **(ECF Nos. 45, 47, 48, 56)**
16   STAPLES THE OFFICE
     SUPERSTORE LLC, a limited liability
17   company authorized to do business in
     the state of California, and DOES 1
18   through 50 inclusive,
19
                         Defendant.
20

21

22

23        Plaintiff Juan Carlos Corral moved for certification of three classes and one

24   subclass. (Mot., ECF No. 48-1.) Defendant Staples the Office Superstore LLC opposed

25   the motion, (Opp'n, ECF No. 55), and Plaintiff replied, (Reply, ECF No. 59). The Court

26   heard argument on January 9, 2023.

27   ///

28

## I.    PRELIMINARY ISSUES

Defendant moves for an order striking the Corrected Declaration of Justin Regus ("Regus Declaration," ECF No. 54-1) submitted in support of Plaintiff's motion for class certification. (Mot. to Strike, ECF No. 56.) Plaintiff opposed the motion, (Opp'n to Mot. to Strike, ECF No. 57), and Defendant replied, (Reply to Mot. to Strike, ECF No. 60). To the extent the Court relies on the Regus Declaration in this Order, the motion is denied, as the Court determines that the portions of the declaration cited in this Order either do not constitute expert opinion or are supported by an adequate foundation to qualify Regus as an expert. Fed. R. Evid. 702. The Court declines to resolve objections to opinions not cited in this Order.

Plaintiff seeks to file certain documents in support of its motion under seal. (Appl. for Leave to File Documents Under Seal, ECF No. 47.)[1] Defendant filed a declaration in support of Plaintiff's application. (Decl. in Support of Pl.'s Application, ECF No. 50.) Because these documents contain detailed information concerning Defendant's employee bonus programs, which "would harm Staples' competitive standing" if publicly disclosed, (Goggins Decl. ¶ 7, ECF No. 50-1), the Court concludes there is good cause or compelling reasons to allow these documents to be filed under seal. *See Munoz v. PHH Corp.*, No. 1:08-cv-00759-DAD-BAM, 2016 WL 10646326, at *2 (E.D. Cal. Sept. 16, 2016) (acknowledging split in authority on whether a class certification motion is subject to the good cause or compelling reasons standard for sealing); *cf. Birch v. Fam. First Life, LLC*, No. 22-cv-815-MMA (NLS), 2022 WL 10198866, at *1 (S.D. Cal. Oct. 17, 2022) (recognizing information concerning employee bonuses may present "compelling reasons" to overcome the "strong presumption" that documents filed in connection with a dispositive motion should remain unsealed). The application is GRANTED. Plaintiff shall file the documents

---

[1] Plaintiff also filed an apparently duplicative application, which the Court denies as moot. (ECF No. 45.)

1   under seal pursuant to Local Rule 79-5.2.2(c).

2   **II.    BACKGROUND**

3       Plaintiff is a former employee of Defendant who worked in a non-exempt

4   position at one of Defendant's retail stores in Los Angeles. (TAC ¶ 8, ECF No. 39;

5   Corral Decl. ¶ 4, ECF No. 48-2.) "Plaintiff worked as an Operations Supervisor" and

6   was responsible for "overseeing operation and presentation of the store, supervising

7   employees, authorizing returns, unlocking high-ticket value items for customers, and

8   providing customer service." (Mot. 7 (citing Corral Decl. ¶ 5).)

9       Under California law, an employer may "not employ an employee for a work

10  period of more than five hours per day without providing the employee with a meal

11  period of not less than 30 minutes." Cal. Lab. Code § 512(a). Likewise, "[a]n employer

12  shall not employ an employee for a work period of more than 10 hours per day without

13  providing the employee with a second meal period of not less than 30 minutes." *Id.* "If

14  an employer fails to provide an employee a meal or rest or recovery period in

15  accordance with a state law," then the employer must "pay the employee one additional

16  hour of pay at the employee's *regular rate of compensation* for each workday that the

17  meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c) (emphasis

18  added). In *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858, 878 (2021), the

19  California Supreme Court held that the term "'regular rate of compensation' in section

20  226.7(c) . . . encompasses not only hourly wages but all nondiscretionary payments for

21  work performed by the employee." The California Supreme Court applied its decision

22  retroactively. *Id.* at 880.

23      "When an employment relationship comes to an end, the Labor Code requires

24  employers to promptly pay any unpaid wages to the departing employee. The law

25  establishes different payment deadlines depending on the manner of departure."

26  *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 105 (2022). California Labor

27  Code section 203 outlines the penalties, "commonly referred to as 'waiting time

28  penalties,'" that apply when an employer willfully fails to meet these deadlines. *Id.* at

106.  Discharged employees, as well as employees who resign with sufficient notice, are entitled to immediate payment of wages earned and unpaid at the termination of their employment.  Cal. Lab. Code §§ 201(a), 202(a).  Employees who resign *without* sufficient notice must be paid within 72 hours.  *Id*. § 202(a).  "[J]ust like other forms of wages, any unpaid [missed-break] premium pay must be paid promptly once an employee leaves the job."  *Naranjo*, 13 Cal. 5th at 110.  Failure to pay a missed break premium may result in penalties under California Labor Code section 203.  *Id.*

California Labor Code section 226 requires employers to provide accurate wage statements that include "a detailed list of information, including hours worked, wages earned, hourly rates, and employee- and employer-identifying information."  *Id.* at 117.  In addition to these requirements, employers must accurately "report premium pay for missed [meal and rest] breaks."  *Id.* at 121.  "[F]ailure to report premium pay for missed breaks can support monetary liability under section 226 for failure to supply an accurate itemized statement reflecting an employee's gross wages earned, net wages earned, and credited hours worked."  *Id.*

Against this backdrop of California labor laws, Plaintiff alleges that Defendant failed to pay its employees missed meal and rest break premiums at the "regular rate of compensation" as defined by *Ferra*, but instead paid out these premiums "at class members' 'base' or 'straight' hourly rate of pay."  (Mot. 6.)  Plaintiff also alleges that Defendant violated California Labor Code sections 201 and 202 because former employees did not receive their missed break premiums at their "regular rate of compensation" upon their separation.  (*See* Mot. 16.)  Lastly, Plaintiff alleges that Defendant did not provide accurate wage statements because missed-break premiums were included "as an additional hour of pay," meaning "Plaintiff's wage statement did not accurately reflect his actual total number of hours worked" and failed to "state all applicable hourly rates in effect during the pay period."  (Mot. 19.)

/ / /

/ / /

4

Accordingly, Plaintiff seeks to certify the following classes:

- A "Regular Rate Class" consisting of non-exempt employees who (based on Defendant's records): (a) worked shifts over six hours; (b) were paid a "meal rest premium" during a period when they had a "Meal Event" or "Rest Event"; (c) had either a "Meal Event" (defined as an incident when the employee's time records show that the employee did not take a meal period, recorded a meal period of less than 30 minutes, or began a meal period after the end of the fifth hour of work) on days the employee worked shifts over six hours, or had a "Rest Event" (defined an incident when Defendant's time records show both a compliant meal period and the employee attested "no" to the question of whether they had an opportunity to take a meal and rest break on Defendant's attestation prompt); and (d) were paid nondiscretionary incentive pay that covered the period when the other foregoing criteria were met.  (Notice of Mot. 2, ECF No. 48.)

- A "Waiting Time Penalties Subclass" consisting of all members of the Regular Rate Class whose employment with Defendant ended at any time between November 12, 2018 and the present.  (Notice of Mot. 2–3.)

- A "Wage Statement Class 1" consisting of all current and former non-exempt employees of Defendant who worked for Defendant in the State of California from November 12, 2020 to September 17, 2021, who received a "meal rest premium" from November 12, 2020 and September 17, 2021, and who received nondiscretionary incentive compensation.  (Notice of Mot. 3.)

- A "Wage Statement Class 2" consisting of all current and former non-exempt employees of Defendant who worked one or more closing shifts for Defendant in the State of California from November 12, 2020 to September 17, 2021, who received a "meal rest premium" between November 12, 2020 and September 17, 2021, and who worked in one of the following positions: Assistant Manager, Sales Manager, Operations Supervisor, and Tech Supervisor.  (Notice of Mot. 3.)

/ / /

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 23 requires a party seeking class certification to "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id*. at 351 (internal quotation marks omitted).  A plaintiff must demonstrate that the four requirements of Rule 23(a) are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id*. at 349 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982)).  The party also must prove the class meets one of the three alternative provisions in Rule 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Where, as here, the plaintiff seeks certification under Rule 23(b)(3), the plaintiff must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In evaluating predominance and superiority, courts consider four factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*.

## IV.    REGULAR    RATE    CLASS    AND    WAITING    TIME    PENALTIES    SUBCLASS ANALYSIS

### A.    Rule 23(a) Requirements

#### 1.    <u>Numerosity – Fed. R. Civ. P. 23(a)(1)</u>

Rule 23(a)(1) requires a class to "be so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). Courts routinely find this requirement satisfied for classes that have 40 or more members. *Astorga v. County of Los Angeles*, No. CV 20-9805-AB (AGRx), 2021 U.S. Dist. LEXIS 78138, at *7 (C.D. Cal. Mar. 17, 2021). The Regular Rate Class includes approximately 1,100 individuals. (Regus Decl. ¶ 13.) The Waiting Time Penalties Subclass includes approximately 845 individuals. (Regus Decl. at ¶ 14.) Consequently, the numerosity requirement is satisfied.

### 2.    Commonality – Fed. R. Civ. P. 23(a)(2)

Rule 23(a)(2) requires a plaintiff to demonstrate the presence of "questions of law or fact common to the class." Courts construe this requirement permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Even a single common question of law or fact will do. *Dukes*, 564 U.S. at 359. Plaintiff argues there are several common questions that are capable of "a common answer" across the class. *Id.* at 352. (*See* Mot. 15–16.)

With respect to the "Regular Rate Class," Plaintiff argues common questions include "[w]hether Defendant included all forms of nondiscretionary compensation when determining the regular rate of pay for purposes of calculating meal and rest premiums," "[w]hether Defendant's former uniform policy and practice of paying meal and rest premiums at the employee's straight-hourly rate of pay violates California law," "[w]hether Defendant's practice of paying meal and rest premiums at the employee's straight-hourly rate of pay resulted in employees' wage statements failing to accurately reflect the total amount of gross and net wages earned," "[w]hether Defendant's practice of paying meal and rest premiums at the employee's straight-hourly rate of pay resulted in class members not being able to promptly and easily determine the information the actual total amounts of gross and net wages earned without reference to any other documents," and "[w]hether Defendant's practice of paying meal and rest premiums at the employee's straight-hourly rate of pay violates California's Unfair Competition Law." (Mot. 15–16.)

/ / /

1  With respect to the "Waiting Time Penalties Subclass," Plaintiff argues
2  "[w]hether Defendant's practice of paying meal and rest premiums at the employee's
3  straight-hourly rate of pay resulted in Defendant failing to pay all compensation owed
4  to class members upon their separation of employment," and "[w]hether Defendant
5  must pay Section 203 penalties for the failure to pay all meal and rest premiums owed
6  to class members upon their separation of employment" are common questions to all
7  subclass members.  (Mot. 16.)

8  Defendant claims Plaintiff failed to demonstrate commonality; however, this
9  argument largely rests on factors related to the "predominance" requirement of Rule
10  23(b)(3).  (Opp'n 12–16.)  "A court may analyze commonality and predominance
11  together in the context of each proposed class and subclass," but this Court elects to
12  consider Defendant's arguments in the context of its Rule 23(b)(3) analysis.  *Wilson v.*
13  *Pactiv LLC*, No. 5:20-cv-01691-SB-KK, 2021 WL 5818492, at *6 (C.D. Cal. Dec. 3,
14  2021) (cleaned up).  Consequently, the Court concludes Plaintiff has demonstrated that
15  "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), such
16  that "a class-wide proceeding [could] generate common answers apt to drive the
17  resolution of the litigation," *Dukes*, 564 U.S. at 350 (internal quotation marks omitted).

18  ### 3.   Typicality – Fed. R. Civ. P. 23(a)(3)

19  Rule 23(a)(3) requires that "the claims or defenses of the representative parties
20  are typical of the claims or defenses of the class."  "The purpose of the typicality
21  requirement is to assure that the interest of the named representative aligns with the
22  interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).
23  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of
24  absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at
25  1020.  "The test of typicality is whether other members have the same or similar injury,
26  whether the action is based on conduct which is not unique to the named plaintiffs, and
27  whether other class members have been injured by the same course of conduct." *Ellis*
28  / / /

1  *v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks

2  omitted).

3          Plaintiff argues his "claims are typical of the members of the class" because they

4  "arise from the same general set of facts and legal theories as the putative class

5  members' claims." (Mot. 18.)  Plaintiff contends he received at least one "meal rest

6  premium" that did not accurately reflect his "nondiscretionary incentive compensation."

7  (*Id.*)  Plaintiff contends that his premium payments, like other members of the putative

8  class, were calculated at his "straight hourly rate of compensation, even though his

9  regular rate of compensation exceeded his straight hourly rate of pay." (*Id.* at 19.)

10         Defendant does not address Plaintiff's arguments but instead argues that

11  Plaintiff's claims are atypical because they give rise to a unique defense that is

12  inapplicable to other class members.  (Opp'n 17.)  Although some courts have held

13  "class certification is inappropriate where a putative class representative is subject to

14  unique defenses which threaten to become the focus of the litigation," the Ninth Circuit

15  requires a showing that "there is a danger that absent class members will suffer" because

16  "their representative is *preoccupied* with defenses unique to it." *Hanon*, 976 F.2d at

17  508 (emphasis added) (internal quotation marks omitted).  As a result, the two issues to

18  be considered are "whether a class representative is subject to a *unique* defense, such

19  that she will be 'preoccupied' and whether the defense will become the focus of the

20  litigation to the detriment of the class." *Pryor v. Aerotek Sci., LLC*, 278 F.R.D. 516,

21  528 (C.D. Cal. 2011).

22         Defendant argues that in his capacity as supervisor, Plaintiff was responsible for

23  administering his store's employees' meal and rest breaks. (Opp'n 17.)  Consequently,

24  "Plaintiff may have contributed to the meal or rest break violations he claims his

25  subordinates suffered."  (*Id.* at 22.)  Plaintiff responds by arguing that "no unique

26  defense is likely to arise in this case" because "Plaintiff was not in charge of creating

27  or implementing any of the policies or practices at issue here." (Reply 9.)

28  / / /

Defendant cites *Mateo v. V.F. Corp.*, No. C 08-05313 CW, 2009 WL 3561539 (N.D. Cal. Oct. 27, 2009), for the proposition that courts should find a plaintiff atypical "where plaintiff had supervisory power over putative class members' breaks." (Opp'n 17 n.50.)  Although the facts of *Mateo* bear some resemblance to this case, they are distinguishable in important ways.  As an initial matter, the plaintiff in *Mateo* possessed different degrees of authority with respect to other employees than the plaintiff here.  In *Mateo*, the plaintiff had "management responsibilities which included opening and closing the store, and *setting the store's daily schedule*, including the meal and rest breaks for the rest of the store's hourly employees." 2009 WL 3561539, at *1 (emphasis added).  Here, the evidence does not show Plaintiff had authority to set any employee's schedule, but instead indicates he was among the employees "responsible for . . . ensuring that other associates in [his] store were provided their meal and rest breaks." (Corral Dep. Tr. 164:1–6, ECF No. 55-3.)  Relatedly, in *Mateo* there was no dispute that the plaintiff actually made and enforced the break schedules for other employees. *See Mateo*, 2009 WL 3561539 at *4 ("Plaintiff was responsible for making and enforcing the daily schedule, which included rest periods and meal breaks for herself and the other employees.").  Here, however, Defendant "did not allege (except hypothetically) or present evidence that Plaintiff" actually caused other employees to miss their breaks. (Reply 9.)  Instead, Defendant only alleged that Plaintiff's status as a supervisor "*may* have contributed to the meal or rest break violations he claims his subordinates suffered." (Opp'n 22 (emphasis added).)

Most importantly, however, the nature of the plaintiffs' claims is different.  In *Mateo* the plaintiff alleged the defendant directly "violated the California Labor Code by failing to provide employees with" their required breaks. 2009 WL 3561539, at *1.  Here, however, "[t]he issue is not whether Defendant failed to provide compliant meal and rest premiums, or whether managers responsible for ensuring that associates received proper meal and rest breaks violated their duties.  Rather, the issue is whether Defendant appropriately paid the premiums at the regular rate of compensation."

(Reply 12.)  Unlike in *Mateo*, liability here turns on Defendant's independent policy decisions.  Under Plaintiff's theory, no liability could have arisen simply because Plaintiff directed a subordinate to miss their meal or rest break (assuming he ever issued such directives).[2]

Questions of typicality should be construed permissively.  *Hanlon*, 150 F.3d at 1020.  Defendant alleged Plaintiff's conduct only in the hypothetical.  Even if proven, such conduct would constitute at most a *contributing* factor to Defendant's liability. Accordingly, the Court concludes Plaintiff is unlikely to become "preoccupied" with a potential defense or that any unique defenses are likely to "become the focus of the litigation to the detriment of the class."  *Pryor*, 278 F.R.D. at 528.

Because any unique defense will not render Plaintiff's claims atypical, Plaintiff's injuries are "reasonably co-extensive with those of absent class members."  *Hanlon*, 150 F.3d at 1020.  The requirements of Rule 23(a)(3) are therefore satisfied.

### 4.    Adequacy – Fed. R. Civ. P. 23(a)(4)

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  Generally, "[t]o determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020).  Additionally, "class action law presumes that a function of the class

---

[2] Defendant also cites *Moore v. Addus Healthcare, Inc.*, No. 19-cv-01519-HSG, 2021 WL 1022875, at *8 (N.D. Cal. Mar. 17, 2021), (Opp'n 17 n.50), but this *Moore* is likewise distinguishable.  The plaintiff in *Moore* also set schedules for other putative class members, and the defendant alleged in non-hypothetical terms that the plaintiff directly ordered other employees to work through their mandatory breaks.  *Id.* Similarly, claims in *Moore* were premised on a failure to provide meal and rest periods, and not for an alleged policy of underpaying premiums whenever a violation occurred. *Id.*

1    representative is to monitor class counsel."  1 William B. Rubenstein, *Newberg and*

2    *Rubenstein on Class Actions* § 3:70 (6th ed.) ("*Newberg*").  As a result, courts should

3    ensure a lead plaintiff is adequately capable of discharging this responsibility and is not

4    "simply lending their name[] to a suit controlled entirely by the class attorney."

5    *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 580 (C.D. Cal. 2010) (internal quotation

6    maks omitted), *aff'd in relevant part*, 476 F. App'x 154 (9th Cir. 2012).  A plaintiff is

7    an inadequate representative when he demonstrates a "striking unfamiliarity" with the

8    case such that he is incapable of "checking the otherwise unfettered discretion of

9    counsel in prosecuting the suit." *Welling v. Alexy (In re Cirrus Logic Secs.)*, 155 F.R.D.

10   654, 659 (N.D. Cal. 1994) (cleaned up).

11        Plaintiff argues he is an adequate representative because he "responded to written

12   discovery, disclosed information under Rule 26, produced documents, and has been

13   deposed." (Mot. 19.)  Plaintiff also states "[h]e will continue to vigorously represent

14   the interests of the class and has agreed to abide by all of the necessary duties of a class

15   representative, including assisting counsel in the litigation and taking into consideration

16   the interests of other class members throughout the litigation." (*Id.*)  Defendant

17   contends Plaintiff is inadequate "because he knows nothing about his claims and the

18   individuals he purportedly seeks to represent, he lacks honesty and credibility, and he

19   has a direct conflict with other putative class members." (Opp'n 18.)

20                  a.    *Plaintiff's Knowledge*

21        "The threshold knowledge required of the class representatives is low." *Nevarez*

22   *v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 583 (N.D. Cal. 2018) (internal

23   quotation marks omitted).  In *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366 (1966)

24   the Supreme Court concluded an elderly Polish immigrant who spoke very little English

25   was an adequate plaintiff in a securities litigation class action even though

26            she could not explain the statements made in the complaint,

27            that she had a very small degree of knowledge as to what the

28            lawsuit was about, that she did not know any of the defendants

                                    12

1     by name, that she did not know the nature of their alleged

2     misconduct, and in fact that in signing the verification she had

3     merely relied on what her son-in-law had explained to her

4     about the facts in the case.

5     "A named plaintiff does not need to have special knowledge of the case or possess a

6 detailed understanding of the legal or factual basis on which a class action is

7 maintained," but a plaintiff should demonstrate "familiarity with the underlying theory

8 of the case." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008). For these

9 reasons, "objections to adequacy based on a named representative's alleged ignorance

10 are disfavored." *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 543

11 (N.D. Cal. 2018).

12     Here, Defendant argues that "[a] proposed class representative is not adequate

13 when he lacks basic knowledge about his case, such as the nature of his claims and the

14 contours of the putative class." (Opp'n 19.) Citing deposition testimony, Defendant

15 claims Plaintiff "did not remember whether he was paid premiums, he did not know

16 whether he had any issues with the rate at which premiums were paid, and he did not

17 know whether the wage statements Staples provided him were inaccurate or deficient

18 in any way." (*Id.*)

19     Plaintiff contends his "lack of precise knowledge as to these issues is a direct

20 result of Defendant's illegal policies regarding the failure to maintain accurate records

21 or provide accurate wage statements." (Reply 9–10.) To the extent Defendant

22 challenges Plaintiff's adequacy based upon his ignorance of specific facts, Plaintiff's

23 argument is sound. Defendant's challenged conduct could reasonably have prevented

24 Plaintiff from being aware of these facts, and thus is not a basis upon which to conclude

25 Plaintiff is inadequate. *See Alba v. Papa John's USA, Inc.*, No. CV 05-7487 GAF

26 (CTx), 2007 U.S. Dist. LEXIS 28079, at *28 (C.D. Cal. Feb. 7, 2007) ("The adequacy

27 of a putative class representative does not depend on his legal knowledge or on whether

28 he knows all the facts about the class as a whole.").

More problematic, however, is Plaintiff's total lack of understanding as to the claims he is bringing. Plaintiff claims his deposition "showed he was familiar with both the nature of his claims and the contours of the putative class alleged at his deposition." (Reply 9.) This is flatly contradicted by deposition errata Plaintiff sought to file.[3] Among other changes, the proposed errata include:

Q. Are you suing for any other reason with respect to bonuses?

A. No.

**Errata sheet change to:** A. ~~No~~. I'm also suing because the incentive compensation was not included in my regular rate of pay calculation.

Q. Are you suing on behalf of anyone other than managers who worked the closing shift?

A. No.

**Errata sheet change to:** "A. ~~No~~. I'm also suing on behalf of non-exempt employees who were paid incentive compensation.

Q. And so when you say you're suing Staples for unpaid wages, is that another way of saying that you're suing Staples for bonuses that I believe you said other people were paid but you were not paid?

A. Yes, correct.

**Errata sheet change to:** A. ~~Yes, correct~~. I'm suing for the period of time I was clocked out for meals and required to remain on duty. I am also suing for unpaid meal and rest break

---

[3] Defendant argues "Plaintiff did not request review of the deposition transcript before the deposition ended as required by Rule 30(e), so he was not entitled to submit an errata sheet." (Opp'n 19 n.52.) The Court takes no position on whether the errata were validly submitted.

1                  premium wages. I am further suing for premiums and

2                  overtime wages that were not paid at the correct rate.

3 (Opp'n 20 n.53 (formatting altered); *accord* Corral Dep. Errata Sheet, ECF No. 55-3.)

4       The inconsistencies and contradictions between Plaintiff's deposition testimony

5 and proposed errata are significant. At both the hearing on this issue and during the

6 deposition, Plaintiff's counsel stated objections on the grounds that Plaintiff was being

7 asked to provide legal conclusions. (*E.g.*, Corral Dep. Tr. 31:5–6.) The Court

8 understands that class action matters can present complex legal issues that may be

9 inscrutable to those unskilled in the legal arts. In this case, however, Plaintiff clearly

10 disclaimed his intention to bring the claims which underlie his motion to certify the

11 Regular Rate Class and Waiting Time Penalty Subclass.

12       This case is also readily distinguishable from *Surowitz*. There, the plaintiff was

13 able to explain "that she had put over $2,000 of her hard-earned money into Hilton

14 Hotels stock" but "that she was not getting her dividends" and was aware "that

15 something was wrong." *Surowitz*, 383 U.S. at 370. Unlike Mrs. Surowitz's testimony,

16 Plaintiff's deposition strongly indicates he did not understand that he had been injured

17 by Defendant's conduct at all. Additionally, while the plaintiff in *Surowitz* lacked

18 virtually any knowledge of the specifics of the case, she was nonetheless capable of

19 adequately "monitor[ing] class counsel." *Newberg* § 3:70. In bringing her claim

20 alleging violations of federal securities laws, Mrs. Surowitz regularly relied on advice

21 from her son-in-law, a "professional investment advisor" who held a law degree from

22 Harvard and had served on "the legal staff representing the United States in the

23 Nuremberg trials", who also possessed a "master's degree in economics from Columbia

24 University," and who did not have a financial interest in the outcome of the litigation

25 as either a plaintiff or attorney. *Surowitz*, 383 U.S. at 368–69. Here, Plaintiff's ability

26 to supervise class counsel is demonstrably weaker, as he lacks similar means of

27 compensating for his lack of knowledge.

28       Although "objections to adequacy based on a named representative's alleged

ignorance are disfavored," *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. at 543, Plaintiff's testimony gives every indication he is "simply lending [his] name[] to a suit controlled entirely by the class attorney," *Alberghetti*, 263 F.R.D. at 580.  It is apparent that Plaintiff has so little knowledge of his own injury or the claims he is purportedly bringing that he is not able to adequately check the "otherwise unfettered discretion of counsel" with respect to the Regular Rate Class and Waiting Time Penalties Subclass claims. *Alexy*, 155 F.R.D. at 659 (internal quotation marks omitted). Accordingly, Plaintiff is an inadequate representative of the Regular Rate Class and Waiting Time Penalty Subclass.

### b.    *Plaintiff's Credibility*

Although the knowledge issue renders Plaintiff an inadequate representative, the Court addresses and rejects two of Defendant's other inadequacy arguments. "Given that the proposed class representatives are performing a function on behalf of the absent class members, courts occasionally opine that they should do so with diligence and credibility." 1 *Newberg* § 3:68.  The Court is cognizant that "[f]ew plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished." *Id.* (quoting *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990)).  Consequently, the party challenging the plaintiff's credibility "must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *Id.* (quoting *Dubin*, 132 F.R.D. at 272).  When courts have found integrity and credibility to be "relevant considerations," the analysis has been limited to factors "that are both directly relevant to the litigation and supported by confirmed examples of dishonesty." *Kouchi v. Am. Airlines, Inc.*, No. CV 18-7802 PSG (AGRx), 2021 WL 6104391, at *9 (C.D. Cal. Oct. 27, 2021) (internal quotation marks omitted).

Defendant argues that Plaintiff lacks credibility because he "was terminated for his admitted fraudulent and unethical behavior, after he disregarded Staples' warning to stop using customer coupons for his own personal benefit, cheating Staples out of

hundreds of dollars." (Opp'n 21.)  The ethics of abusing an employer's coupon policy notwithstanding, this matter has no bearing on the issues relevant to the proposed Regular Rate Class and Waiting Time Penalty Subclass and does not render Plaintiff inadequate to represent the classes.  *See Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK (JCx), 2016 WL 9450680, at *10 (C.D. Cal. Feb. 25, 2016) (refusing to find class representative who had been "terminated from his job for falsifying an injury report" inadequate as the "instances of alleged dishonesty do not so severely cut against Plaintiff's credibility as to make him an inadequate representative" given "[n]either instance is relevant to the conduct at issue in [the] case").

Defendant also takes issue with the fact that Plaintiff "seeks to certify a class and subclass premised on purported meal and rest break violations" despite never attesting he was denied an opportunity to take the required meal and rest breaks when prompted by Defendant's timekeeping system. (Opp'n 21.)  The parties disagree as to whether employees understood the attestations they were asked to complete.  (*See* Reply 7–8; Opp'n 15 n.46.)  Because Plaintiff's conduct can be explained by confusion rather than intentional deceit, the Court declines to conclude Plaintiff lacks credibility for the purposes of class certification.

Finally, while deposition errata can be used to call a proposed lead plaintiff's credibility into question on a motion for class certification, *see Maeda v. Kennedy Endeavors, Inc*., Civil. No. 18-00459 JAO-WRP, 2021 WL 2582574, at *13 (D. Haw. June 23, 2021), the Court concludes that they are not so egregious in this case as to conclude Plaintiff's integrity is so compromised that he cannot serve as an adequate representative of the class, *see Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 525 (C.D. Cal. 2012) (citing "a criminal conviction for fraud" as the kind of "confirmed example[] of dishonesty" that can render a plaintiff inadequate).  Additionally, while the contradictions raised by the errata are concerning, the Court has every reason to believe that no further incidents calling Plaintiff's integrity into question will arise given "[a] district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*,

17

1   563 F.3d 948, 966 (9th Cir. 2009).

2       The Court concludes that any credibility issues with Plaintiff are not "directly

3   relevant to the litigation," *Kouchi*, 2021 WL 6104391 at *9 (internal quotation marks

4   omitted), and will not undermine "plaintiff's credibility" such that "a fact finder might

5   reasonably focus on plaintiff's credibility, to the detriment of the absent class members'

6   claims," 1 *Newberg* § 3:68 (quoting *Dubin*, 132 F.R.D. at 272).  Accordingly, Plaintiff's

7   credibility is not a basis upon which to deny class certification.

8                               c.    *Conflict of Interest*

9       Defendant also argues that Plaintiff and his counsel will have divided loyalties as

10  they seek to "represent managerial associates, such as Plaintiff, with supervisory

11  responsibilities over others with respect to meal and rest breaks."  (Opp'n 22.)  The

12  Ninth Circuit has recognized that there is no "per se rule concerning adequacy of

13  representation where the class includes employees at different levels of an employment

14  hierarchy." *Staton v. Boeing Co*., 327 F.3d 938, 958 (9th Cir. 2003).  The analysis in

15  such circumstances "is context-specific and depends upon the particular claims alleged

16  in a case." *Id.*  Ultimately, "[p]laintiffs attempting representation of nonsupervisory

17  employees by supervisory employees . . . must offer evidence of coextensive interests."

18  *Id*. at 959 (ellipsis in original) (internal quotation marks omitted).

19      Although Defendant contends this representation will result in "divided

20  loyalties," (Opp'n 22), it offers no indication that the interests of supervisory and

21  nonsupervisory employees are misaligned.  As Plaintiff points out, "Plaintiff and all

22  other class members, whether managerial or not, have a shared interest in being paid

23  meal and rest premiums at the legally required rate." (Reply 12.)  Consequently, the

24  Court finds no reason to conclude that Plaintiff or Plaintiff's counsel are inadequate

25  because of a potential conflict of interest.

26                                      ***

27      Because Plaintiff lacks the requisite knowledge of his own claims, he cannot

28  adequately check the discretion of counsel and is therefore an inadequate representative

                                        18

for the Wage Rate Class and Waiting Time Penalties Subclass. As a result, the requirements of Rule 23(a) are not satisfied.

**B.**    **Rule 23(b) Requirements**

In addition to the requirements of Rule 23(a), a plaintiff seeking class certification must demonstrate the action falls within one of the three subsections of Rule 23(b): (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b). Here, Plaintiff seeks certification under Rule 23(b)(3). (Mot. 20.) "To qualify for certification under this subsection, a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).

1.    <u>Predominance</u>

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted). In conducting this analysis, courts presume "the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.* "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). Courts must consider "whether the common, aggregation-enabling, issues in the case

19

1  are more prevalent or important than the non-common, aggregation-defeating,

2  individual issues." *Id.* (internal quotation marks omitted).

3      Defendant is subject to a rebuttable presumption that its employment records with

4  respect to meal and break premiums are complete and accurate. *See Donohue v. AMN*

5  *Servs., LLC*, 11 Cal. 5th 58, 77 (2021) ("If time records show missed, short, or delayed

6  meal periods with no indication of proper compensation, then a rebuttable presumption

7  arises.").  Applying this logic, records showing that an employer paid a missed meal or

8  rest break premium are sufficient to give rise to the rebuttable presumption that the

9  premium was actually owed.  "Employers can rebut the presumption by presenting

10 evidence that employees . . . had in fact been provided compliant meal periods during

11 which they chose to work." *Donohue*, 11 Cal. 5th at 77.

12     Defendant argues that even if their records show employees were paid a missed

13 break premium at the incorrect rate, this is not enough to show common issues

14 predominate because

15        associates were routinely paid premiums when they

16        *voluntarily* chose to skip or delay a break—such that the

17        premium, although gratuitously paid, was not owed.  An

18        employer cannot underpay something it did not need to pay at

19        all—and even for a premium paid that would be subject to a

20        regular rate true-up under *Ferra*, establishing liability would

21        require the factfinder to figure out whether there was an

22        underlying meal or rest period violation, which necessitates

23        endless inquiries into associates' variable and individualized

24        practices.

25 (Opp'n 13 (citations omitted).)  According to Defendant, "establishing

26 liability . . . would necessarily devolve into a series of mini-trials to determine,

27 whenever a premium was paid within a bonus accrual period, whether the associate was

28 owed a premium in the first place." (*Id.* at 16.)

1    Plaintiff argues

2        Defendant pays meal and rest premiums under two
3        circumstances that are relevant to this case.  The first
4        circumstance is when the employee attests that he or she did
5        not receive all meal or rest breaks.  Following said attestation,
6        Defendant investigates the incident and determines to pay the
7        premium.  The second circumstance is when Defendant's
8        time keeping records identify a meal violation.  Under the
9        second instance, Defendant's management still reviews the
10       time records before submission to payroll, even though the
11       premium is generated automatically.  In both cases,
12       Defendant has had the opportunity to investigate the meal or
13       rest event, and it ultimately made the determination to pay the
14       premium.

15   (Mot. 22.)  Plaintiff concludes, "As to whether the compensation was owed to the
16   employee, Defendant has already made that determination." (*Id.*)

17       To some degree both parties are correct.  Payments that are "gratuitously paid"
18   do not constitute a violation of Labor Code section 226.7, but records showing that a
19   missed meal or break premium payment *was* made may give rise to a rebuttable
20   presumption that a premium was actually owed.  Additionally, Defendant's policy of
21   investigating whether it was obliged to pay a missed meal or rest break premium may
22   serve as further evidence that Defendant's records are accurate.  The fact that these
23   incidents are investigated, however, does not mean that the presumption of accuracy
24   cannot be rebutted.  The question in this case, then, is whether Defendant has offered
25   sufficient evidence to rebut the presumption of accuracy in situations where its records
26   show it paid a missed meal or rest break premium.

27   / / /

28   / / /

21

1    Summarizing California labor law, the court in *Donohue* stated:

2         An employer is liable only if it does not provide an employee

3         with the *opportunity* to take a compliant meal period. The

4         employer is not liable if the employee chooses to take a short

5         or delayed meal period or no meal period at all.  The employer

6         is not required to police meal periods to make sure no work is

7         performed.  Instead, the *employer's duty is to ensure that it*

8         *provides the employee with bona fide relief from duty* and that

9         this is accurately reflected in the employer's time records.

10   11 Cal. 5th at 78 (emphases added).  Consequently, Defendant may satisfy its burden if

11   it supplies evidence showing the employee receiving the premium was provided "the

12   opportunity to take a compliant meal [or break] period." *Id.* "Representative testimony,

13   surveys, and statistical analysis, along with other types of evidence, are available as

14   tools to render manageable determinations of the extent of liability." *Id.* at 77 (internal

15   quotation marks omitted).

16        Here, Plaintiff's own expert stated that in 3,512 of the 3,597 instances he

17   analyzed in which Defendant paid out a missed meal premium, the employee receiving

18   the premium nonetheless attested that he or she was provided the opportunity to take a

19   compliant break. (Regus Decl. ¶ 10.) An employee's personal attestation that he or she

20   was provided an opportunity to take a compliant break is sufficient to rebut the

21   presumption that payment of a missed break premium reflects an instance where the

22   premium was required.  The employee is in the best position to know whether he or she

23   chose to voluntarily skip or delay their break.  Defendant's policy of investigating does

24   not render this rebuttal evidence insufficient.  To conclude otherwise would effectively

25   place the burden on employers "to police meal periods to make sure no work is

26   performed." *Donohue*, 11 Cal. 5th at 78.  Consequently, common issues only

27   predominate for the relatively small subset of the proposed class who were paid missed

28   break premiums *and* attested that they were not provided an opportunity for a compliant

22

break.

Plaintiff argues that the California Supreme Court in *Donohue* "considered and rejected the same argument" that an employee's attestation cannot be a defense to liability. (Reply 8.) The facts in *Donohue* are inapposite. In *Donohue*, whenever "an employee recorded a missed, short, or delayed meal period, a drop-down menu appeared on" the defendant's timekeeping system. 11 Cal. 5th at 78. The drop-down menu prompted employees to state that they were provided an opportunity to take a timely break but chose not to, that they were provided an opportunity to take a timely break but took a shorter or later one, or that they were not provided an opportunity to take a timely break. *Id.* at 78–79. The defendant's timekeeping system, however, neglected to provide the prompt when an employee's break was inaccurately recorded as compliant due to the defendant's policy of rounding (i.e., capturing time entries and converting them to the closest ten-minute increment). *Id.* at 79. For example, an employee who "clocked out for lunch at 11:02 a.m. and clocked in after lunch at 11:25 a.m." would have registered time punches in the timekeeping system at "11:00 a.m. and 11:30 a.m.," such that the employee's 23-minute meal period would be erroneously registered as 30 minutes. *Id.* at 62. As a result, "[t]he drop-down menu did not appear for such meal periods." *Id.* at 79. The court concluded that "[i]f any of those meal periods were not voluntarily shortened or delayed," then the defendant would have been "liable for premium pay." *Id.*

Here, Defendant's timekeeping system mandated the attestation for employees "[u]pon clocking out at the end of a shift." (Reply 7.) Consequently, this case does not involve a situation where class members were not provided the opportunity to complete the attestation. Contrary to Plaintiff's assertion, the California Supreme Court did not consider and reject the use of employee attestations as a method of rebutting the presumption that an employer's records are accurate. In fact, the court stated that the employee attestation process "would have ensured accurate tracking of meal period violations if it had simply omitted rounding." *Id.* at 78. In contrast, here employees

had to complete the attestation at the end of their shift, which is reliable evidence to rebut the presumption in virtually every instance.

Finally, Plaintiff contends that attestations are unreliable because they are

entirely unclear about which 'company policy' the employee

is being asked to attest, whether the employee understood

how many meal and rest breaks to which he or she was

entitled, whether the employee understood what it means to

be 'provided the opportunity to take the meal and rest breaks,'

or whether the employee's understanding comports with

Defendant's responsibilities under California law.

(Reply 7–8.) The attestation stated, "By clicking 'Yes' I attest that in accordance with company policy I was provided the opportunity to take the meal and rest breaks to which I was entitled to [sic] during this shift." (Reese Decl. Ex. 8, ECF No. 48-12.) The Court recognizes that some employees may have been confused by the wording of the attestation. Plaintiff's argument, however, is precisely the kind of "non-common, aggregation-defeating, individual issue[]" that precludes a finding of predominance under Rule 23(b)(3). *Bouaphakeo*, 577 U.S. at 453. What each individual employee understood the attestation to mean cannot be determined on a class-wide basis.

Because Defendant has shown it can rebut the presumption that its payment of a missed meal or break premium accurately reflects an incident where the premium was owed, Plaintiff fails to demonstrate that common issue predominate. Accordingly, individual questions would predominate over common questions for the Regular Rate Class and Waiting Time Penalties Subclass as those classes are defined in the motion.

### 2.    Superiority

"Rule 23(b)(3) also requires that class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1023 (quoting Fed. R. Civ. P. 23(b)(3)). Courts should consider "the class members' interests in individually controlling the prosecution or defense of separate

24

1  actions," "the extent and nature of any litigation concerning the controversy already

2  begun by or against class members," "the desirability or undesirability of concentrating

3  the litigation of the claims in the particular forum," and "the likely difficulties in

4  managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). "If each class member has

5  to litigate numerous and substantial separate issues to establish his or her right to

6  recover individually, a class action is not 'superior.'" *Zinser v. Accufix Rsch. Inst., Inc.*,

7  253 F.3d 1180, 1192 (9th Cir. 2001).

8     As discussed above, the overwhelming majority of class members would have to

9  litigate separate factual issues in order to establish Defendant's liability. Thus, Plaintiff

10 has not established that a class action is a superior means of adjudicating these claims.

11                                    ***

12    For the reasons articulated above, Plaintiff has failed to satisfy the requirements

13 of Rule 23(a) and Rule 23(b). As a result, the Court DENIES Plaintiff's motion to

14 certify the Regular Rate Class and Waiting Time Penalties Subclass.

15 **V.    WAGE STATEMENT CLASS ANALYSIS**

16    **A.    Rule 23(a) Requirements**

17        1.    Numerosity – Fed. R. Civ. P. 23(a)(1)

18    Wage Statement Class 1 includes approximately 1,000 individuals. (Regus Decl.

19 ¶ 16.) Wage Statement Class 2 includes approximately 425 individuals. (*Id.* ¶ 17.) For

20 reasons stated above, the Court concludes the numerosity requirement is satisfied. (*See*

21 *supra* section IV.A.1.)

22        2.    Commonality – Fed. R. Civ. P. 23(a)(2)

23    Plaintiff contends the common questions are "[w]hether Defendant's practice of

24 adding an hour of pay under the 'Regular Earnings' section of employees' wage

25 statements to account for meal and rest premiums resulted in employees' wage

26 statements failing to accurately reflect the total hours worked by the employee,"

27 "[w]hether Defendant's practice of adding an hour of pay under the 'Regular Earnings'

28 section of employees' wage statements to account for meal and rest premiums resulted

in employees' wage statements failing to accurately reflect all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee," and "[w]hether class members would be able to identify their total hours worked and the hourly rates in effect during the pay period and the corresponding number of hours worked from their wage statement alone without reference to any other document or information." (Mot. 16–17.)  For reasons stated above, the Court concludes this requirement is satisfied. (*See* section IV.A.2.)

### 3. Typicality – Fed. R. Civ. P. 23(a)(3)

Plaintiff's status as a supervisor does not render his Wage Statement Class claims atypical for the reasons discussed above.  (See Section IV.A.3.)  With respect to the Wage Statement Class claims specifically, Defendant argues that Plaintiff lacks standing because his claims are time barred, as "[t]he statute of limitations for a wage statement claim is one year." (Opp'n 23 (citing Cal. Civ. Proc. Code § 340(a).)  A time-barred plaintiff is not typical for the purposes of class certification.  *See Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 860 (N.D. Cal. 2020) ("[T]he existence of a statute of limitations issue mandates the denial of certification per se . . . ." (internal quotation marks omitted)).  The question to be considered then, is whether Plaintiff's claim is indeed subject to "a statute of limitations issue" that makes him atypical.  *Id.*

Defendant claims "the last premium payment Plaintiff received was on December 27, 2020, paid on January 8, 2021 and reported on Plaintiff's wage statement of that date." (Opp'n 24 (citing Bernicke Decl. ¶ 20, ECF No. 55-6; Corral Decl. ¶ 11).)  Plaintiff filed his original complaint in state court on November 12, 2021, (Not. of Removal Ex. C, ECF No. 1-3), but he did not assert this theory of liability until he filed his Third Amended Complaint in this Court on September 13, 2022, (TAC).  Defendant contends Plaintiff's claims are time-barred because "Plaintiff had until January 8, 2022 to assert this theory, but he did not do so until September 13, 2022, when he filed the Third Amended Complaint—more than eight months too late." (Opp'n 24.)

/ / /

Plaintiff counters that the statutory period to bring a wage statement claim did not begin to accrue until Plaintiff first discovered Defendant's alleged violation. (Reply 14.) In situations where it applies, the so-called discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). The parties do not cite, and the Court's research has not identified, any case stating whether the discovery rule applies to claims arising under California Labor Code section 226. In the absence of controlling authority, this Court must predict how the California Supreme Court would decide the issue. *Judd v. Weinstein*, 967 F.3d 952, 955–56 (9th Cir. 2020).

"The policy reason behind the discovery rule is to ameliorate a harsh rule that would allow the limitations period for filing suit to expire before a plaintiff has or should have learned of the latent injury and its cause." *Eisenberg Vill. of L.A. Jewish Home for Aging v. Suffolk Constr. Co., Inc.*, 53 Cal. App. 5th 1201, 1213 (2020) (internal quotation marks omitted). "[T]he discovery rule most frequently applies when it is particularly difficult for the plaintiff to observe or understand the breach of duty, or when the injury itself (or its cause) is hidden or beyond what the ordinary person could be expected to understand." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1248 (2003).

Here, the nature of the alleged violation strongly suggests the application of the delayed discovery rule is appropriate. Plaintiff states "his wage statements did not separately identify premium wages paid to him." (Reply 15.) Plaintiff claims that "despite his diligence in investigating his employment records," Defendant's alleged violation could not be detected "because the records produced . . . neither reflected when his premiums were paid nor the manner in which they were paid." (*Id.*) Essentially, Plaintiff would have had to maintain a separate log of his hours to know whether his wage statements included a missed meal or break premium. This is fundamentally at odds with the purpose of California's wage statement laws. *See Gen. Atomics v. Superior Ct.*, 64 Cal. App. 5th 987, 994 (2021) ("The core purpose of section

1   226 is to ensure an employer documents the basis of the employee compensation

2   payments to assist the employee in determining whether he or she has been compensated

3   properly." (cleaned up)).  Accordingly, the limitations period appears to have not begun

4   until Plaintiff discovered his premiums were allegedly inaccurately reported on his

5   wage statement.

6        Plaintiff claims he "first discovered the facts giving rise to his wage statement

7   claim on August 8, 2022, when Defendant identified the dates on which he was paid

8   meal period premiums." (Reply 15; *see* Reese Decl. Ex. 6, at 9, ECF No. 48-10.[4])

9   According to Plaintiff's argument, because Plaintiff's TAC was filed in September

10  2022, the claims were brought within the statutory period.  For class certification

11  purposes only, the Court accepts Plaintiff's timeliness theory and deems Plaintiff

12  sufficiently typical to meet this requirement.

13              4.    Adequacy – Fed. R. Civ. P 23(a)(4)

14       Defendant's challenge to Plaintiff's adequacy on the grounds "Plaintiff's utter

15  lack of knowledge about his case makes him inadequate" appears to be limited to the

16  Regular Rate Class and Waiting Time Penalties Subclass claims.  (Opp'n 19–20.)  To

17  the extent this argument is made as to Plaintiff's knowledge of the Wage Statement

18  Class claims, Plaintiff's deposition testimony and errata do not indicate the same lack

19  of understanding as to the nature of this claim.  (*See generally* Corral Dep. Tr.; Corral

20  Dep. Errata Sheet.)  Further, the Court's review of the record does not give rise to any

21  indication that Plaintiff mischaracterized the Wage Statement Class claims.[5]  In one of

22  the few instances where the record shows that Plaintiff addressed the claims outside the

23

24  _____

25  [4] Because the exhibit consists of two independently sequentially paginated documents,
    the pinpoint citation here refers to the page number assigned by the CM/ECF system.

26  [5] Nor did Defendant cite any such instance.  If the Court inadvertently overlooked such
    evidence, the parties are reminded that "[t]he art of advocacy is not one of mystery.  Our

27  adversarial system relies on the advocates to inform the discussion and raise the issues

28  to the court." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

pleadings, his declaration indicates he properly understood the nature of the claim.[6] (*See* Corral Decl. ¶ 13.)

"The threshold knowledge required of the class representatives is low." *Nevarez*, 326 F.R.D. at 583.  Given "objections to adequacy based on a named representative's alleged ignorance are disfavored," *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. at 543, the Court concludes Plaintiff has demonstrated a sufficient understanding of the Wage Statement Class claims such that he is capable of "checking the otherwise unfettered discretion of counsel in prosecuting the suit," *Alexy*, 155 F.R.D. at 659 (cleaned up).

As discussed above, Defendant's other adequacy arguments are unavailing. (*See supra* sections IV.A.4.b–c.)  The Court determines that Plaintiff is an adequate representative of the class.

**B.      Rule 23(b) Requirements**

1.      <u>Predominance</u>

Plaintiff's Wage Statement Class claims are not subject individual issues such that "the common, aggregation-enabling, issues in the case are [less] prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453 (internal quotation marks omitted).  The issue with respect to this claim is not whether Defendant was obliged to pay a missed meal or rest break premium, but whether its employees' wage statements complied with the requirements of California Labor Code section 226.  As a result, even gratuitously paid premiums could give rise to liability if the wage statements are inaccurate under California law. The answer to this question is readily ascertainable through a review of Defendant's own records.  Because "the same evidence will suffice for each member to make a prima

---

[6] Plaintiff's declaration also indicates he apparently understands the nature of the Regular Rate Class and Waiting Time Penalties Subclass claims.  Unlike those claims, however, Plaintiff's apparent understanding of his Wage Statement Class claims is not fatally undermined by his sworn deposition testimony.

facie showing or the issue is susceptible to generalized, class-wide proof," Plaintiff has
shown common issues predominate. *Tyson Foods*, 577 U.S. at 453 (cleaned up).

### 2. <u>Superiority</u>

The Rule 23(b)(3)(A)–(D) factors suggest class proceedings would be superior
to individual proceedings here. As to the first factor, "[w]here damages suffered by
each putative class member are not large," class members have a much weaker interest
in controlling the course of the litigation through an individual action, and the first factor
"weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190. Although
Plaintiff does not identify the total amount each class member is expected to recover,
California Labor Code section 226(e) provides a penalty of $50 for the first violation
for each employee, and $100 for each violation thereafter, up to a maximum of $4,000
per employee. Given courts have concluded a recovery up to $8,871 is sufficiently
modest to weigh in favor of certification, the Court concludes any potential recovery
for individual Wage Statement Class members is likewise too modest to incentivize
individual action here. *Kimbo v. MXD Grp., Inc.*, No. 2:19-cv-00166 WBS KJN, 2020
WL 4547324, at *5 (E.D. Cal. Aug. 6, 2020).

The second factor, related to prior or ongoing suits, "is intended to serve the
purpose of assuring judicial economy and reducing the possibility of multiple lawsuits."
7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and
Procedure* § 1780 (3rd ed.) ("*Federal Practice and Procedure*"). "Where classwide
litigation of common issues will reduce litigation costs and promote greater efficiency,
a class action may be superior to other methods of litigation." *Valentino v. Carter-
Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The Court is aware of only one prior
case alleging similar violations against Defendant, *Thomas Edgar v. Staples Inc., et al.*,
Los Angeles County Superior Court Case No. BC713753. Because there is no "clear
threat of multiplicity" of suits or any obvious "risk of inconsistent adjudications," the
Court concludes this factor weighs in favor of certification. 7AA *Federal Practice and
Procedure* § 1780.

The third factor requires an analysis of "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). Plaintiff's Wage Statement Class claims are limited to alleged violations of California law affecting class members who worked in Defendant's California stores. Because class members are likely to be located in this state, and witnesses and relevant evidence are unlikely to be located elsewhere, this requirement is satisfied. *Cf. Zinser*, 253 F.3d at 1191–92 (concluding third factor not satisfied "where the potential plaintiffs are located across the country and where the witnesses and the particular evidence will also be found across the country" (citation omitted)).

Finally, the fourth factor weighs in favor of certification. "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Id.* at 1192. There are virtually no individualized issues with respect to the Wage Statement Class. (*See supra* section IV.B.1.) As a result, any "difficulties" that may be encountered in the management of a class action are likely to be minimal. Fed. R. Civ. P. 23(b)(3)(D).

***

Because Plaintiff has met his obligation of satisfying the requirements of Rule 23(a) and 23(b)(3), the Court GRANTS Plaintiff's motion for class certification as to his Wage Statement Classes.

## VI.    APPOINTMENT OF CLASS COUNSEL

When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(g)(1). A court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). A court also must assure itself that class counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

1    Plaintiff requests that the Court appoint GrahamHollis APC as class counsel.

2  (Mot. 25.)  The Court grants this request.  Class counsel has done significant work in

3  identifying claims and investigating the potential claims in this action.  Counsel also

4  has the resources, experience, and applicable legal knowledge to competently prosecute

5  this action. (Reese Decl. ¶¶ 4–10, ECF No. 48-4.) Class counsel's conduct throughout

6  this proceeding has demonstrated that counsel will fairly and adequately represent the

7  interests of the class.  The lack of conflicts mentioned above assures the Court of this.

8  GrahamHollis APC meets the requirements of Rule 23(g) to proceed as class counsel in

9  this case.

10  **VII.  CONCLUSION**

11    Plaintiff's motion for class certification is GRANTED in part and DENIED in

12  part.  Plaintiff's motion to certify the Regular Rate Class and Waiting Time Penalties

13  Subclass is DENIED.  Plaintiff's motion to certify the Wage Statement Classes is

14  GRANTED.  Wage Statement Class 1 is defined as all current and former non-exempt

15  employees of Defendant who worked for Defendant in the State of California from

16  November 12, 2020 to September 17, 2021, who received a "meal rest premium" from

17  November 12, 2020 and September 17, 2021, and who received nondiscretionary

18  incentive compensation.  Wage Statement Class 2 is defined as all current and former

19  non-exempt employees of Defendant who worked one or more closing shifts for

20  Defendant in the State of California from November 12, 2020 to September 17, 2021,

21  who received a "meal rest premium" between November 12, 2020 and September 17,

22  2021, and who worked in one of the following positions: Assistant Manager, Sales

23  Manager, Operations Supervisor, and Tech Supervisor.

24    The Court appoints Plaintiff Juan Carlos Corral to serve as the class

25  representative for both Wage Statement Classes.  The Court appoints GrahamHollis

26  APC as class counsel for both Wage Statement Classes.

27    The Court orders the parties to meet and confer regarding a proposed schedule

28  for the remainder of the case, including the final date for hearing a dispositive motion,

1  the date for a final pretrial conference and pretrial filings, and a date for trial.  The

2  parties shall also meet and confer regarding a proposed plan for class notice to be given

3  at Defendant's expense.  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350

4  (1978) (recognizing district court's discretion to order defendants to bear cost of class

5  notice "where a defendant can perform one of the tasks necessary to send notice, such

6  as identification, more efficiently than the representative plaintiff").  The parties shall

7  submit the proposed plan and proposed schedule within 21 days of the date of this

8  Order.

9

10  **IT IS SO ORDERED.**

11

12  Dated: February 6, 2023

13  MARK C. SCARSI
   UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33