1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10  JUAN CARLOS CORRAL,              Case No. 2:22-cv-01254-MCS-PVC
11  individually and on behalf of all
    similarly situated and/or aggrieved   **ORDER RE: MOTION FOR PRELIMINARY**
12  employees of Defendants in the State of   **APPROVAL OF CLASS ACTION**
    California,                        **SETTLEMENT (ECF NO. 76)**
13
                       Plaintiff,
14
15              v.

16  STAPLES THE OFFICE
17  SUPERSTORE LLC, a limited liability
    company authorized to do business in
18  the state of California, and DOES 1
19  through 50 inclusive,

20                     Defendant.
21                        .
22

23
24          Plaintiff Juan Carlos Corral moves for an order granting preliminarily approval

25  of a proposed class action settlement and authorizing class notice.  (Mot., ECF No. 76-

26  1.)  Defendant Staples the Office Superstore LLC filed a notice of non-opposition to

27  Plaintiff's motion.  (Notice, ECF No. 79.)  The Court heard oral argument on July 24,

28  2023.

## I.    BACKGROUND

The factual background of this case is outlined in greater detail in the Court's order regarding Plaintiff's motion for class certification.  (Order, ECF No. 64.)

Plaintiff's initial complaint was filed in state court and alleged Defendant failed to provide meal periods, provide rest periods, maintain accurate records, engaged in unlawful, unfair, and/or fraudulent business practices, and was liable under California's Private Attorneys General Act ("PAGA"), California Labor Code section 2698 *et seq.* (Notice of Removal, ECF No. 1.)  Prior to removal, Plaintiff filed a First Amended Complaint adding causes of action for unpaid wages, inaccurate wage statements, and untimely payment of wages.  (*Id.*)  After Defendant removed this case to federal court, (*id.*), Plaintiff moved to remand the case back to state court, (Mot. to Remand, ECF No. 12).  The motion to remand was denied.  (Order Re: Mot to Remand, ECF No. 19.) Subsequently, Plaintiff amended the complaint twice to assert new facts, revise the proposed class definitions based on information ascertained through discovery, and assert new claims that Defendant did not separately itemize meal and rest period premiums on wage statements.  (SAC, ECF No. 26; TAC, ECF No. 39.)

On October 31, 2022, Plaintiff filed a motion for certification of four separate classes: a "Regular Rate Class," a "Waiting Time Penalties Subclass," and two "Wage Statement Classes."  (Class Certification Mot., ECF No. 48.)  Defendant opposed that motion, (Class Certification Opp'n, ECF No. 55), and the Court heard oral argument on January 9, 2023.  The Court only granted certification of the two "Wage Statement Classes."  (Order 32.)  By stipulation of the parties, the Court amended its class certification order to certify a single "Wage Statement Class" defined as "[a]ll current and former non-exempt employees of Defendant who worked for Defendant in the State of California from November 12, 2020 to September 17, 2021, and who received a 'meal rest premium' from November 12, 2020 to September 17, 2021."  (Order Re: Stip., ECF No. 67.)

///

2

## II.    LEGAL STANDARD

At the preliminary approval stage, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

As to fairness, Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*, 516 F.3d 1095, 1100 (9th Cir. 2008). Review of the settlement is "extremely limited," and courts should examine "the settlement taken as a whole, rather than the individual component parts, . . . for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

At the preliminary approval stage, courts in this circuit consider whether the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (internal quotation marks omitted). Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

## III.    ANALYSIS

The Court previously concluded that the Rule 23 requirements were satisfied with respect to the Wage Statement Class in its order granting class certification. (Order 32.) The Court sees no reason to disturb that decision, and it is reaffirmed in this Order.

1    Accordingly, the Court turns to whether the proposed settlement is fair.

2        **A.    The Settlement Process**

3        The Court "considers the means by which the parties reached their settlement."
4   *Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014).  Here, the settlement
5   was reached following more than 18 months of litigation and motion practice.  Both
6   Plaintiff's motion to remand and motion for class certification were strongly contested.
7   "The parties exchanged thousands of pages of documents, including written policies
8   and procedures, timekeeping and payroll records, wage statements, and a list of non-
9   exempt employees who received meal and rest premiums between September 8, 2020
10  and September 4, 2021."  (Mot. 4 (citing Reese Decl. ¶ 31, ECF No. 76-2.)   The
11  proposed settlement was also the product of "a private mediation on April 27, 2023 with
12  Stephanie Chow of Mediated Negotiations, LLC."   (Reese Decl. ¶ 24.)  "With the
13  assistance of the mediator, the Parties discussed the various difficult legal and factual
14  issues of this case," and made "reasonable compromises in light of the facts, issues, and
15  risks presented."  (*Id.* ¶ 34.)  It appears that both sides "considered the uncertainty and
16  risks of further litigation, and the difficulties and added expense inherent in further
17  litigation."  (*Id.*)

18       "[T]he proposed settlement appears to be the product of serious, informed, non-
19  collusive negotiations."  *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959,
20  966 (N.D. Cal. 2019) (internal quotation marks omitted).  The parties negotiated this
21  settlement after months of fact discovery, and it appears to be the product of arm's
22  length bargaining facilitated by a disinterested mediator who could rely on a robust
23  factual record.  Consequently, the nature of the settlement process weighs in favor of
24  granting preliminary approval of the proposed settlement.

25  ///

26  ///

27  ///

28

4

**B.**     **Subject to a Modification of the Proposed Class Notice, There Are No Obvious Deficiencies in the Settlement**

When evaluating a proposed class action settlement, a court should consider possible deficiencies related to: 1) the scope of the released claims, 2) the notice plan, 3) the *cy pres* designee, and 4) the requested attorneys' fees.  *See Custom LED, LLC v. eBay, Inc*., No. 12-cv-00350-JST, 2013 WL 6114379, at *7–8 (N.D. Cal. Nov. 20, 2013); *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 121–23 (D. Ariz. 2022).

### 1.     *Release of Claims*

There are no issues related to the release of claims that suggest preliminary approval should be denied.  The scope of the release is limited to "wage statement related claims reasonably related to the factual allegations asserted in Plaintiff's operative complaint." (Mot. 15.)  Because the claims to be released track the allegations in the complaint, the release is not improperly broad.  *See Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 303 (E.D. Cal. 2011) (holding release of claims not overbroad because "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants").

### 2.     *Notice*

Subject to the single deficiency identified below, the notice plan favors granting preliminary approval.  Federal Rule of Civil Procedure 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  "The yardstick against which [courts] measure the sufficiency of notices in class action proceedings is one of reasonableness."  *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) (quoting *In re Bank of Am. Corp.*, 772 F.3d 125, 132 (2d Cir. 2014)).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th

Cir. 2004) (internal quotation marks omitted). The Court considers both the procedural aspects of presenting the notice to Class Members as well as the substantive terms of the notice itself.

The proposed notice procedures appear to be reasonably calculated to "alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.*, 361 F.3d at 575 (internal quotation marks omitted). "Defendant will provide the Settlement Administrator" the "(i) name, (ii) last known residence address, (iii) last known telephone number, (iv) Social Security number, [and] (v) the number of Eligible Class Pay Periods" of each Class Member. (Reese Decl. Ex. 1 ("Settlement Agreement"), at 15.) The Settlement Administrator will then use this information to provide a "first-class mailed notice to all Class Members, as well as" conduct "in-depth skip tracing on Class Notices returned without a forwarding address." (Mot. 19–20; *accord* Settlement Agreement 16.) "The Settlement Administrator shall immediately re-mail the Class Notice to all updated addresses obtained through" skip tracing. (Settlement Agreement 16.)

As to the substance of the notice itself, Federal Rule of Civil Procedure 23(c)(2)(B) requires that a class notice clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;

> (ii) the definition of the class certified;

> (iii) the class claims, issues, or defenses;

> (iv) that a class member may enter an appearance through an attorney if the member so desires;

> (v) that the court will exclude from the class any member who requests exclusion;

> (vi) the time and manner for requesting exclusion; and

> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

With one exception, the proposed notice meets each of these requirements.  (*See* Settlement Agreement Ex. A ("Class Notice").)  The notice does not appear to inform class members that they may enter an appearance through an attorney if they so desire.[1] *See* Fed. R. Civ. P. 23(c)(2)(B)(iv).  The Court orders that the class notification be modified as follows:  In both sections titled "***You can object to the class portion of the Settlement***" and "***When is the next Court hearing?***" the parties shall add a sentence informing class members that they may enter an appearance through an attorney if they so desire.

Subject to the modification identified above, the Court finds that the proposed notice provides all the information required by Rule 23 and represents the best practicable notice to class members under the circumstances.

### 3.    The Cy Pres Designee

The parties' proposed *cy pres* designee favors granting preliminary approval of the class action settlement.  "The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011).  To comport with *cy pres* standards, "distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Id.*  Here, the parties have selected the State Bar of California's Justice Gap Fund.  (Class Notice 6.)  The Justice Gap Fund provides "funding for about 100 legal aid organizations across the state providing free civil legal services to low-income Californians." State Bar of California, *Justice Gap Fund*, https://www.calbar.ca.gov/Access-to-Justice/Grants/Justice-Gap-Fund (last visited September 7, 2023) [https://perma.cc/7RHQ-A2EH].  Among the

---

[1] The notice considers the appearance of a class member at the final approval hearing "through counsel," (Class Notice 5), but the Court doubts that this provides the affirmative notice "that a class member may enter an appearance through an attorney," whether at the hearing or in any other capacity, as required by Rule 23(c)(2)(B)(iv).

many areas of focus for the Justice Gap Fund is "[p]rotecting the rights of . . . workers to avoid fraud and exploitation." *Id.* Accordingly, the Court concludes the *cy pres* designee "supports projects that will benefit interests similar to those of the Class Members," (Mot. 16), and is therefore appropriate.

### 4. Attorneys' Fees

The benchmark for a reasonable fee award in the Ninth Circuit is typically 25% of a settlement fund. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

"Class Counsel seeks an award of one-third (1/3) of the Gross Settlement Fund (or approximately $266,666.67)." (Mot. 18.) "Class Counsel also seeks reimbursement of the actual costs and expenses incurred, in an amount not to exceed $75,000." (*Id.*) Class Counsel avers its "lodestar exceeds $770,000, and Class Counsel will continue to devote time and effort to this litigation." (*Id.*) Without the benefit of the full briefing of a fee motion substantiating these representations, the Court cannot determine whether an upward departure from the benchmark is warranted in this case. *See Vizcaino*, 290 F.3d at 1048 ("[I]n passing on post-settlement fee applications, courts cannot rationally apply any particular percentage . . . in the abstract, without reference to all the circumstances of the case." (internal quotation marks omitted)). Notwithstanding, the Court acknowledges that fee awards of one-third of the settlement res are not uncommon in wage and hour class actions. *E.g.*, *Hernandez v. Burrtec Waste & Recycling Servs., LLC*, No. 5:21-cv-01490-JWH-SP, 2023 U.S. Dist. LEXIS 147432, at *19 (C.D. Cal. Aug. 21, 2023) (collecting cases). Without making any determination

as to the final award, the Court concludes the requested fee does not preclude preliminary approval of the settlement.

### C.    The Risk of Preferential Treatment Does Not Warrant Denial of Preliminary Approval of the Settlement

The Gross Settlement Fund of $800,000 "is the maximum total amount that Defendant shall be required to pay for any and all purposes under the Settlement." (Reese Decl. ¶ 51.)  "The term 'Class Members' or 'Class' means the Wage Statement Class, defined as '[a]ll current and former non-exempt employees of Defendant who worked for Defendant in the State of California from November 12, 2020 to September 17, 2021 and who received a 'meal rest premium' between November 12, 2020 and September 17, 2021."  (*Id.* ¶ 49.)  "'PAGA Group Members' means Plaintiff and all current and former non-exempt employees of Defendant who worked for Defendant in the State of California from September 8, 2020 to September 17, 2021 and who received at least one 'meal rest premium' during that time."  (*Id.* ¶ 56.)  Given the overlap in definitions, the only salient difference between the two groups is that PAGA Group Members who worked for Defendant from September 8, 2020 to November 11, 2020 are not included in the Class.[2]  There are 2,289 Class Members and 2,525 PAGA Group Members, (*id.* ¶ 36), meaning 236 PAGA Group Members are not included in the Class.

Class Members will receive a pro-rata share of the Net Settlement Fund, which is composed of the funds left over after the Fee and Expense Award, the PAGA Settlement Amount, any Service Award to Plaintiff, and the Settlement Administration Costs have been deducted.  (*Id.* ¶ 52.)  Class Counsel estimates that the Net Settlement Fund will be approximately $409,833.33.  (*Id.* ¶ 88.)  The PAGA Settlement Amount is

---

[2] "PAGA actions need not satisfy Rule 23 class certification requirements."  *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 583 (9th Cir. 2022).  Nor can the Court impose any "manageability requirement" on a PAGA claim.  *Id* at 590.  As a result, there is nothing about the scope of Plaintiff's PAGA claims that warrants denying the motion for preliminary approval of the settlement.

$30,000, "75% of which is to be paid to the LWDA [i.e., the California Labor and Workforce Development Agency] and 25% of which is to form the PAGA Fund to be paid to PAGA Group Members." (*Id.* ¶ 55.)  Class Counsel expects the PAGA Fund will be $7,500. (*Id.* ¶ 91.)  PAGA Group Members will receive a "pro-rata share of the PAGA Fund based on the total number of Eligible PAGA Pay Periods" each PAGA Group Member worked. (*Id.* ¶ 68.)

"Each Class Member is expected to recover an estimated $53.43 per pay period during which a Class Member received at least one 'meal rest premium.'" (*Id.* ¶ 48.) Given the "relief to all class members and the distributions to each class member—including Plaintiff—are calculated in the same way," there is no reason to conclude that any Class Member is receiving preferential treatment over any other Class Member. *Harris v. Vector Mktg. Corp.*, No. C–08–5198 EMC, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011).  The Settlement Agreement also authorizes a $5,000 Service Award for the named plaintiff. (Mot. 7; Reese Decl. ¶ 94.)  Should it be granted final approval, this award on its own does not show preferential treatment.  The Ninth Circuit has recognized "[i]ncentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis removed).  The payment does not appear to be excessive given "the proportion of the payment[] relative to the settlement amount." *Staton*, 327 F.3d at 977.  This Court has granted preliminary approval of class action settlements that included an similar service award. *See Arredondo v. Univ. of La Verne*, No. 2:20-cv-07665-MCS-RAO, 2022 WL 19692042, at *3 (C.D. Cal. Dec. 21, 2022) (Scarsi, J.).

A potential problem arises when considering the settlement of Plaintiff's PAGA claims.  "A plaintiff who brings a PAGA claim does so as the proxy or agent of the [California's] labor law enforcement agencies," meaning "a lawsuit which asserts a PAGA claims and seeks class certification for labor/wage claims, even class members who opt out of the class would be bound by an adverse PAGA judgment or settlement." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (internal

quotation marks omitted).   For this reason, "where plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment." *Id.* at 1134.  "The Court must be cognizant of the risk that despite this responsibility, there may be a temptation to include a PAGA claim in a lawsuit to be used merely as a bargaining chip, wherein the rights of individuals who may not even be members of the class" might "be waived for little additional consideration in order to induce the employer to agree to a settlement with the class." *Id.*

The Court considers whether this is one of those situations.  Class Counsel estimated the maximum amount of PAGA civil penalties that could be recovered to be $2,258,000.[3]  (Reese Decl. ¶ 43.)   Under the proposed settlement, PAGA Group Members will individually receive 25% of the total PAGA Settlement Amount, or $7,500 of a maximum $564,500 possible recovery.  (*Id.* ¶ 91.)   This constitutes approximately 1.3% of the total possible recovery.  Class Members, on the other hand, stand to recover $409,833.33 of a potential $660,150 recovery, (*id.* ¶¶ 41, 88), or roughly 62% of their maximum possible recovery.  Given the stark difference in the discounted awards, the Court has concerns that the PAGA claim may have been used "as a bargaining chip," and "the rights of individuals who" are not "members of the class" were "waived for little additional consideration in order to induce the employer to agree to a settlement with the class." *O'Connor*, 201 F. Supp. 3d at 1134.

---

[3] Class Counsel also calculated "estimated civil penalties for 'subsequent violations' under Labor Code §§ 226.3 and 2699(f) to be $9,032,000.00 and $1,806,400.00, respectively."  (Reese Decl. ¶ 46.)   Defendant contends that they had "not been sufficiently notified of wage statement violations to impose 'subsequent' penalties in this action." (*Id.*) *See Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008).  Without passing on the merits of Defendant's position, the Court assumes for the purposes of this Order only that any subsequent violations would not give rise to recovery in this case.  The Court reserves the right to reconsider this assumption at final approval.

At the hearing on this matter, Class Counsel stated the Court has discretion to award a lower amount for a PAGA Settlement when the claims are brought in a class action. Other courts have recognized as much because increasing a class settlement at the expense of a PAGA settlement "will ultimately benefit the class members, as PAGA's 75%/25% allocation would only shift funds away from the class members" to the LWDA. *Bowen v. Jea Senior Living Health & Welfare Benefit Plan, LLC*, No. 2:20-cv-2318-KJN, 2023 WL 3931805, at *12 (E.D. Cal. June 9, 2023). This policy is unlikely to result in preferential treatment when class members are "*same set of individuals* as the PAGA members." *Id.* (emphasis added). In this case, however, there are 236 PAGA Group Members who are not included in the Class. Consequently, a shift in funds from the PAGA Settlement to the Net Settlement Fund could be interpreted as granting Class Members preferential treatment at the expense of the 236 PAGA Group Members who are not included in the Class.

At the same time, the inherent weaknesses of Plaintiff's PAGA claim suggest that a settlement of just 1.3% of the maximum estimated recovery may be fair. Counsel notes that "some district courts have held that the civil penalty provided in Labor Code § 226.3 applies only when the employee alleges that the employer failed to provide wage statements altogether or failed to keep the records required by Labor Code § 226(a)." (Reese Decl. ¶ 47.) Class Counsel also acknowledges "there was a very real risk that the Court" might have decided to "further reduce Plaintiff's estimated amount under Labor Code § 2699(e)(2), and it is likely that, given the technical nature of the wage statement claim, the Court would, in its discretion, limit the award because it was unjust, arbitrary and oppressive, or confiscatory." (*Id.*) Separately, the Court notes there is a question as to whether "Section 226.3 may be enforced through PAGA" in the first place. *Finder v. Leprino Foods Co.*, No. 1:13–CV–2059 AWI–BAM, 2015 WL 1137151, at *7 (E.D. Cal. Mar. 12, 2015).

Considering the strong potential defenses to Plaintiff's PAGA claims, the Court concludes a settlement reflecting just 1.3% of the potential recovery, standing on its

own, likely represents a "fundamentally fair, reasonable, and adequate" settlement "with reference to the public policies underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at 1133 (internal quotation marks omitted).  The fact that none of these potential defenses apply to the Wage Statement Claims likely explains the difference between the discounts in the PAGA Settlement and the Net Settlement Fund.  Because the PAGA settlement is reasonable, it is unlikely that Class Members are receiving undue preferential treatment at the expense of the 236 PAGA Group Members.

That being said, the Court would still appreciate the views and expertise of the LWDA in evaluating the PAGA Settlement.  When evaluating the parties' motion for final approval, the Court will strongly consider LWDA's response, or lack thereof.  *See e.g.*, *Jordan v. NCI Grp., Inc.*, No. EDCV 16-1701 JVS (SPx), 2018 WL 1409590, at *3 (C.D. Cal. Jan. 5, 2018) ("[T]he Court finds it persuasive that the LWDA was permitted to file a response to the proposed settlement and no comment or objection has been received."); *Echavez v. Abercrombie & Fitch Co.*, No. CV 11–09754–GAF, 2017 WL 3669607, at *3 (C.D. Cal. Mar. 23, 2017) ("The Court infers LWDA's non-response is tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty amount.").  The parties are ordered to lodge any response from the LWDA concerning the reasonableness of the PAGA Settlement within seven days of receipt.

### D.    The Settlement Falls Within the Range of Possible Approval

To determine whether a class action settlement falls within the range of possible approval, a court "must consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *Spann*, 314 F.R.D. at 319 (internal quotation marks omitted).  At the same time, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).  As part of this evaluation,

1    the Court may preview the factors that ultimately inform final
2    approval: [1] the strength of plaintiff's case; [2] the risk,
3    expense, complexity, and likely duration of further litigation;
4    [3] the risk of maintaining class action status throughout the
5    trial; [4] the amount offered in settlement; [5] the extent of
6    discovery completed, and the stage of the proceedings; [6] the
7    experience and views of counsel; [7] the presence of a
8    governmental participant; and [8] the reaction of the class
9    members to the proposed settlement.

10   *Genji*, 14 F. Supp. 3d at 1335 (internal quotation marks omitted).

11           1.    *The Strength of Plaintiff's Case and Risk of Further Litigation*

12           Defendant failed to challenge the sufficiency of Plaintiff's allegations through a
13   motion to dismiss.  As a result, the Court has every reason to believe that many of these
14   claims could succeed on the merits at trial.  At the same time, damages awards cannot
15   always be predicted with great accuracy, meaning any potential recovery is inherently
16   speculative.  With respect to Plaintiff's PAGA claims, the Court previously identified a
17   number of issues that suggest settlement was a wise course of action for Plaintiff.  As a
18   result, the Court concludes the parties have proposed a reasonable settlement given the
19   strength of Plaintiff's case and risks inherent in further litigation.

20           2.    *Stage of Litigation and Extent of Discovery*

21           This suit is mature.  The parties engaged in "extensive formal discovery, which
22   included multiple sets of Interrogatories, Requests for Production, and Requests for
23   Admission," as well as "the depositions of two witnesses designated by Defendant
24   pursuant to FRCP Rule 30(b)(6)."  (Reese Decl. ¶ 30.)  Class Counsel reviewed and
25   analyzed "thousands of documents and records provided by Defendant" and conducted
26   "fact-finding interviews with more than 45 non-exempt employees who worked at 36
27   different locations."  (*Id.*)  The parties also participated in a "full day of mediation with
28   a mediator highly experienced in wage and hour class and representative actions."  (*Id.*

¶ 28.)  Based on these facts, the Court concludes the parties have "exhaustively examined the factual and legal bases of the disputed claims" and that this "militates in favor of the Court's approval of the settlement." *DIRECTV, Inc.*, 221 F.R.D. at 527.

### 3.  The Amount Offered in Settlement

#### a.  <u>Class Members' Settlement</u>

There are 2,289 Class Members in this case who worked a total of 7,717 pay periods during the Class Period. (Reese Decl. ¶¶ 36–37.)  The total maximum statutory recovery payable to the Class is estimated to be $660,150.  (*Id.* ¶ 38.)  "Plaintiff's attorney's fees and costs recoverable under Labor Code § 226(e)(1), which were estimated to be $754,808 at the time of mediation."  (*Id.*)  Therefore, if the Wage Statement Class received the maximum award following trial, it would recover $1,414,958.  Assuming these estimates are reasonable, (*see id.* ¶ 39), the total settlement for the Class of $770,000 (which is the Gross Settlement Fund less the PAGA Settlement Amount) represents a recovery of more than 50%.  Further, Class Members stand to personally recover a pro-rata share of the $409,833.33 Net Settlement Fund, or almost 2/3 of their maximum possible recovery.  (*Id.* ¶¶ 38, 48.)  The Class Members' recovery therefore appears to be "a fair and reasonable compromise of Plaintiff's and the Class Members' claims based on the strengths and weaknesses of the claims, Defendant's formidable defenses, and the avoidance of further risk, time, and expense to pursue further litigation."  (*Id.* ¶ 42.)

Further, even if a higher award was arguably possible, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998) (internal quotation marks omitted).  The question "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  The Court concludes that it is.

///

b.      PAGA Group Members' Settlement

The exact standard applicable to approval of a PAGA settlement is unclear, but "a number of district courts have applied a Rule 23-like standard, asking whether the settlement of the PAGA claims is fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *Haralson*, 383 F. Supp. 3d at 972 (internal quotation marks omitted). "[C]ivil penalties recovered on the state's behalf are intended to remediate present violations and deter future ones, *not* to redress employees' injuries." *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 86 (2020) (internal quotation marks omitted).

The PAGA Settlement Amount is $30,000, or roughly 1.3% of the maximum possible recovery.  Federal courts in California have approved PAGA settlements that reflect a smaller percentage of the total possible recovery. *See Jennings v. Open Door Mktg., LLC*, No. 15-cv-04080-KAW, 2018 WL 4773057, at *9 (N.D. Cal. Oct. 3, 2018) (finding adequate a $10,000 PAGA allocation for claims estimated at $1.4 million, or 0.6% of the total estimated value); *McLeod v. Bank of Am., N.A.*, No. 16-cv-03294-EMC, 2018 WL 5982863, at *2, 4 (N.D. Cal. Nov. 14, 2018) (finding adequate $50,000 settlement for PAGA claims estimated at $4.7 million, or 1.1% of the total estimated value).

Further, Plaintiff provided the LWDA a copy of the settlement agreement on June 22, 2023.  (Reese Decl. ¶ 4; *id.* Ex. 2.)  "More than 60 days have passed since then, and the LWDA hasn't objected or responded to the agreement.  The LWDA's silence doesn't mean that the agency has reviewed the settlement and favors it; but the lack of an objection by the agency does weigh in favor of approval." *Valadez v. CSX Intermodal Terminals, Inc.*, No. 15-cv-05433-AGT, 2020 WL 13179429, at *2 (N.D. Cal. May 13, 2020).

Considering the significant risk that Plaintiff was unlikely to recover anything for his PAGA claims, and reserving the right to consider any LWDA input, the Court finds that preliminary approval of the PAGA settlement is appropriate.

*** 

For the reasons stated above, this factor weighs in favor of granting preliminary approval.

### 4.    The Experience and Views of Counsel

The settlement agreement represents the manifest judgment of counsel on both sides of this dispute.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  At this point, the Court sees no evidence of any "conflict of interest" or indicia that that the settlement was the "product of fraud or overreaching by, or collusion among, the negotiating parties."  *Id.* (internal quotation marks omitted).  As a result, this factor weighs in favor of granting preliminary approval.

### 5.    The Risk of Maintaining Class Action Status Throughout the Trial

Plainitiffs faced a risk of losing class status given "[a] district court may decertify a class at any time."  *Rodriguez*, 563 F.3d at 966.  The parties vigorously contested class certification.  (*See, e.g.*, Class Certification Mot.; Class Certification Opp'n.)  As a result, Plaintiff would need to consider the ongoing risk of losing class certification status if the Settlement Agreement had not been reached.  Therefore, this factor weighs in favor of granting preliminary approval.

### 6.    Remaining Factors

The remaining factors are not applicable at this stage in the proceedings.  To the extent the LWDA is deemed a government participant, the Court will give the LWDA's views significant weight should it choose to provide input as to the reasonableness of the PAGA settlement.  Conversely, should LWDA decline to provide input, the Court will view "the lack of an objection by the agency" as weighing "in favor of approval."  *Valadez*, 2020 WL 13179429, at *2.  The reaction of the Class Members to the proposed settlement cannot yet be ascertained.  Consequently, neither of these factors counsel against granting preliminary approval.

***

Based on the analysis above, the settlement appears to have been "the product of serious, informed, non-collusive negotiations." *Haralson*, 383 F. Supp. 3d at 966. The Court does not see any "obvious deficiencies," and the settlement does not appear to "improperly grant preferential treatment to class representatives or segments of the class." *Id.* Finally, an analysis of the factors required for final approval shows the settlement "falls within the range of possible approval." *Id.* The Court determines that the proposed settlement is fair and reasonable enough for preliminary approval.

## IV.    CONCLUSION

The Court, having duly considered the motion and the points and authorities submitted in support thereof, hereby orders that the motion is GRANTED, subject to the following findings and orders:

1.    The class notification shall be modified as follows:  In both sections titled "***You can object to the class portion of the Settlement***" and "***When is the next Court hearing?***" the parties shall add a sentence informing class members that they may enter an appearance through an attorney if they so desire.

2.    Capitalized terms in this Order have the same meaning they are given in the Stipulation of Settlement and Release ("Agreement") filed with the Motion.

3.    The Court grants preliminary approval of the Settlement based upon the terms set forth in the Agreement.  The Settlement is preliminarily approved as it appears to be proper, to fall within the range of reasonableness, to be the product of arm's-length and informed negotiations, to treat all Class Members fairly, and to be presumptively valid, subject only to any objections that may be raised at or before the Final Approval Hearing.

4.    The Court approves as to form and content the Class Notice, attached to the Agreement as Exhibit A, subject to the modification identified in this Order.  The Court approves the procedure for Class Members to request exclusion from or to object to the Settlement as set forth in the Class Notice.  The Court finds that the rights of

Class Members are adequately protected in that they may exclude themselves from the Settlement Class and proceed with any alleged claims they may have against Defendant, excluding the Released PAGA Claims, or they may object to the Settlement and appear before this Court.

5.    The Court directs the mailing of the Class Notice in accordance with the schedule set forth below and in the Agreement.  The Court finds that the manner and mode of giving notice to Class Members meet the requirements of due process and provide the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

6.    The Court approves ILYM Group, Inc. as the Settlement Administrator. The Settlement Administrator is ordered to carry out the Settlement according to the terms of the Agreement and in conformity with this Order, including disseminating the Class Notice according to the plan described in the Agreement.

7.    A Final Approval Hearing is scheduled for January 8, 2023, at 9:00 a.m. in Courtroom 7C, Courtroom 7C of the First Street Courthouse located at 350 W. 1st Street, Los Angeles, California 90012.

8.    The following dates shall govern for purposes of this Settlement:

| Action | Date |
|--------|------|
| Deadline for Defendant to submit Class Member and PAGA Group Member information to Settlement Administrator | 10 business days from entry of this Order |
| Settlement Administrator to mail Class Notice to Class Members | 5 business days from receipt of Class Member information from Defendant |
| Deadline for Class Members to mail Requests for Exclusion | 45 days from initial mailing of Class Notice |
| Deadline for Class Members to file and serve any objections to the Settlement | 45 days from initial mailing of Class Notice |
| Deadline for Class Counsel to file Motion for Final Approval of Class Action Settlement, PAGA Settlement, Motion for Attorneys' Fees and Costs | December 11, 2023 |
| Final Approval Hearing | January 8, 2024, at 9:00 a.m. |

The Court expressly reserves the right to continue or adjourn the Final Approval Hearing without further notice to the Class Members.

**IT IS SO ORDERED.**

Dated: September 13, 2023

_____

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28